# UNITED STATES OF AMERICA
# TRIAL COURT
# FOR THE DISTRICT OF RHODE ISLAND

FILED

2012 JUL 12 P 1: 51

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

Providence, ss.                                 Civil Action No.

| | |
|---|---|
| Lori Franchina, <br> Complainant <br><br> v. <br><br> City of Providence, Fire Department <br> And <br> Providence Firefighters IAFF Local 799, <br> Respondents | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## CA12- 517M

## COMPLAINT

This is an action for discrimination based on gender, sexual orientation, and disability. Lori Franchina is a lesbian firefighter with years of distinguished service in which she has never been disciplined or received a negative performance review. However, her male colleagues subjected her to such intense, constant, and prolific mistreatment that she eventually was left in multiple situations in which her safety was compromised to such a severe extent that she developed post traumatic stress syndrome. Her multiple complaints to her union and employer were not only ignored, but prompted swift and severe retaliation.

### Parties

1.  Lori Franchina is an individual who resides in West Warwick, RI.

2.  Respondent, the City of Providence ("The city"), is a municipal body and is a legal entity.

3.  Respondent, the Providence Fire Department ("PFD") is is a legal entity.

4. Respondent, Providence Firefighters IAFF Local 799 ("The Union") is a union formed under the laws of the state of Rhode Island.

## Jurisdiction

5. Jurisdiction is proper in this Court because this action is brought to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment and to remedy retaliation against an employee for activity protected under Title VII all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 USCS prec § 12111, The Americans With Disabilities Act of 1990, as amended ("ADAA") for discrimination in employment based on disability.

## Venue

6. Venue is proper here because all parties reside in Providence, RI and the nexus of events giving rise to the cause of action occurred in Providence, RI.

## Background

7. The PFD hired its first female employee in 1992. Lt. Franchina was hired on or about March 18, 2002.

8. The structure of authority in the fire department starts with the Mayor, followed by the Commissioner of Public Safety, followed by the Chief of the Department. Next is an Assistant Chief of the Department and a Deputy Assistant Chief, followed by several Battalion Chiefs, Captains, and Lieutenants. Each of the fourteen stations (called "Engines") is headed by a captain, who oversees the station's four groups, each of which is headed by a lieutenant or by the station captain. That is the overall management command structure.

9. The position of Commissioner of Public Safety was vacant for approximately eight years, until filled in the 2010 elections by Stephen Pare.

## First Instances of Direct Sexual Discrimination

10. On or about November 13, 2005 Lt. Franchina was assigned to Rescue 5.  The Acting Lieutenant at the time dubbed her with the nickname "Frangina"; an apparent combination of her last name (Franchina) and the word vagina.  Lt. Franchina did not immediately complaint about the incident despite the fact that she was shocked and embarrassed.  Unfortunately, the nick name stuck.

11. Lt. Franchina was rapidly promoted to position of authority within the department due to her excellent education and job performance.  She was immediately confronted with insubordination and disrespect from her subordinates.

12. In one such instance, a Rescue driver would repeatedly slam on the brakes an/or take fast, sharp turns while she was working with a patient in the rear of the vehicle in order to knock her over.  When she complained, no action was taken.

13. On another instance, over the course of several days, the male firefighters kept a list of things they disliked about Lt. Franchina on a large, public chalkboard.

14. Lt. Franchina was told countless times by several firefighters that she "would never be in charge."  Several firefighter refused to follow her orders at emergency scenes and would refuse to assist her.

15. Specifically, they would refuse to even leave the engine in order to assist at the scene despite her orders to do so.  Specifically, they would walk away when requested and/or ordered to provide her with assistance.  When she complained to superiors, no action was taken.

16. Lt. Franchina filed several complaints regarding the harassment but no action was taken. For a period of time, she hoped that keeping to herself would deescalate the harassment. It did not.

### Escalating Instances of Sexual Harassment and Complaints

17. On or about April 26. 2006 Lt. Franchina responded to an emergency call involving an unconscious male in an apartment building who needed to be carried down the stairs. Lt. Franchina ascertained that he had a viable pulse and was a candidate for life saving medicine and intervention. Several male firefighters refused to help her move the body. The patient's family members were yelling "why doesn't somebody help her!?" and "why aren't they helping you?" After several minutes of delayed treatment her partner assisted her in transporting the patient to the emergency vehicle. The patient never regained consciousness.

18. On or about September 26, 2006 Lt. Franchina was scheduled to work with FF Ferro. Ferro is a firefighter with a well-documented history of sexually harassing female firefighters.

19. Over two days, Ferro asked Franchina, among other things: "Are you a lesbian, or are you just doing everybody?" Incidentally, he asked her that question within minutes of their first meeting.

20. He also stated: "I'm a lesbian too, we like the same thing;" "normally I don't like working with women;" "when are you going to have babies?" The comments, questions, and jeers continued unabated over an entire fourteen hour shift.

21. Mr. Ferro informed Lt. Franchina, while at a response in the E.R., that a nurse there gave him, or someone else in the department, herpes. Finally, during their last shift together,

he exited the E.R., was pinching his nipple, rubbing his tongue over his teeth and yelling at her in a very loud voice "my lesbian lover."

22. A hearing was held on December 11, 2006 regarding the incident with Ferro. Eventually, FF Ferro was found to have harassed Lt. Franchina and his employment was terminated. As described more fully below, the investigation and the termination of a male firefighter only increased the harassment she was to endure. FF Ferro was reinstated within months of the termination.

## Retaliation

23. On November 20, 2006 Lt. Franchina was required to attend sexual harassment training with several other firefighters and union members. One Union executive board member, in the presence of several firefighters stated "who the fuck do you think you are? Are you trying to get Ferro fired?"

24. Lt. Franchina was excluded from group meals for months. After the emergency calls without support and outright hostility, she began to fear for her safety and requested a transfer.

25. Even after the transfer the insubordination and hostility continued throughout the year of 2007. In one particularly dangerous incident that occurred in December, 2007, Lt. Franchina was intentionally and dangerously left alone with a potentially suicidal and homicidal patient for several minutes. When Franchina asked her subordinate about it afterwards he stated "you don't fucking tell me what to do!"

26. During the year 2008 Franchina continued to submit complaints in writing and verbally that her subordinates refused to follow orders jeopardizing her safety and patient safety.

Upon information and belief, no investigations were conducted and none of the subordinates were disciplined or reprimanded in anyway.

27. After the series of complaints in 2009, the incidents of insubordination became increasingly dangerous.

28. On March 19, 2009 two firefighters refused to take vitals at the scene as ordered by Lt. Franchina. One firefighter told her that he had taken the patient's blood pressure and that it was "normal." When she got the patient to the rescue vehicle, unassisted as usual, she discovered that the patient was in a full blown STEMI (heart attack).

29. Just a few weeks later Lt. Franchina was responding to a cardiac emergency in a residential home with another Rescue squad. Lt. Franchina arrived on the scene after the first responders. The first responders believed that the chief complaint from the patient was vomiting. The other Lieutenant saw Lt. Franchina on the scene and said to his crew "we are all set here." Then, in violation of policy, ordered his team to cease assisting the patient and to refuse assistance requested by Franchina. Lt. Franchina and her partner were able to learn from a Spanish speaking person on the scene that the patient was in the midst of a heart attack. She informed the other lieutenant of the seriousness of the situation. He left her at the scene in violation of department policies regarding cardiac emergencies and told her "We're all set here."

30. On June 5, 2009 Lt. Franchina responded to a car accident involving an off-duty police officer who sustained life threatening injuries. The patient was in critical condition and he was stuck in the car. Another lieutenant requested assistance from a vehicle that could bring the "jaws of life" to extract the driver. Lt. Franchina immediately realized that the

vehicle was a soft-top convertible and opened the roof so that she could access the injured police officer and administer life-saving intervention.

31. When the officer was stabilized enough to move she placed him in the rescue vehicle for transport. She asked the second lieutenant to provide a driver so that she could attend to the patient. Apparently embarrassed at not recognizing the car was a convertible and unnecessarily ordering for the "jaws of life" the other lieutenant refused to provide a driver for several minutes stating "who the fuck do you think you are" and that "she paid too much attention to the accident scene."

32. Lt. Franchina made complaint about all of these incidents to her chiefs and supervisors. She was told that nothing would be done until she put it in writing, as she had done on over forty prior occasions. She requested a meeting with the other lieutenants to work out their differences. The Chief refused to schedule, and discouraged her from requesting a meeting by telling her that a meeting only make things worse. She requested the meeting several times. No meeting ever occurred.

33. Upon information and belief, none of her complaints were investigated and none of her harassers were disciplined in any manner despite the blatant violations of policy and disregard for safety.

34. On June 28, 2009 Lt. Franchina responded to an unresponsive adult male who was unconscious and had vomited blood. Engine 2 also responded. Lt. Franchina ordered the Engine 2 firefighters to leave the patient in place so that she could assess him. Another firefighter replied by telling her that "he was just another drunk" and to "stop wasting our time."

35. The Engine Crew dragged the patient out of his bedroom and through the apartment. At one point, his genitals fell out in front of his family members. Lt. Franchina was finally able to regain control of the firefighters when the family members became irate. Treatment at the hospital revealed that the patient was suffering from internal bleeding in the brain. Complaints made by Lt. Franchina regarding this incident were also ignored.

36. During the same time frame Lt. Franchina submitted written complaints regarding the insubordination of her own staff. They were using cell phones to talk and text while driving at full speed with sirens on despite her admonitions, speaking to her in a belligerent manner, and openly mocking her by sharing with each other, and her, what they hated about her. Upon information and belief, these written complaints were also ignored.

### The Job Street Incident

37. The final incident that started the demise of Lt. Franchina's career and mental health occurred on July 29, 2009 in an apartment located on Job Street in Providence.

38. Lt. Franchina and Rescue 3 were responding to a 911 call for gun shots. When they arrived on the scene police confirmed that the subject suffered from a single gunshot to the head.

39. Lt. Franchina took vitals and discovered that the subject had a faint pulse, was breathing, and exhibited low but viable blood pressure. She ordered the other firefighters to get him to the rescue while she prepared cardiac pads, IV supplies, medications, and other materials needed in order to attempt to sustain life while they transported the subject to the hospital.

40. As she prepared the vehicle for transport she noticed it was taking too long to get the patient downstairs. She found the firefighters with the patient in the street, telling crime scene investigators that he was "as dead as it gets." She screamed at them to resume the process.

41. She worked on the patient in the back of the vehicle with a male subordinate.

42. The male had brain matter, blood, and fluids from the patient on his rubber gloves after transporting the body. She told him that he was spreading the blood and fluids on the equipment, and her, and instructed him to remove his gloves. She continued CPR while he was supposed to remove the gloves.

43. Usual policy and practice requires that a firefighter will place his hand into a receptacle before taking off the gloves. This is because the gloves are elastic and form fitting. When they are taken off the hand they have a tendency to snap. The snap can turn blood, liquids, and/or light matter into projectiles. Directing the snap into a receptacle is intended to decrease the exposure to infectious diseases that can occur.

44. In this case, he intentionally placed his gloved hands in her face and removed the gloves. The snap launched blood, brain matter, and other fluids into her mouth, nostrils, eyes, and ears.

45. The patient was received at the hospital with a pulse but unfortunately could not be saved. Lt. Franchina was placed on Critical Incident Stress Leave.

46. Again, she complained verbally and in writing about the incident. She attributed the lack of respect to harassment, and she attributed the widespread insubordination the department's failure to discipline and/or control the male firefighters.

47. Upon information and belief, no investigation was conducted and no officers were disciplined. Chief Crawford told Franchina that "this Complaint is going to cause you even more problems around here than the one about Ferro."


**Fire Fighters Hall Incident**

48. On December 10, 2009 Lt. Franchina was physically assaulted by another firefighter at the Fire Fighters Hall ("FF Hall") located on Printery Street in Providence.

49. She had just left the hall with her partner after shopping for Christmas items but re-entered the building alone when she realized she forgot something. There were seven male firefighters in the hall when she went back inside.

50. One of the males, who is over six feet tall, immediately screamed at her "who the fuck do you think you are complaining about that call?" "You are a fucking zero. A donut. You go over our heads to the chiefs about that call." At the time he had backed her into a wall, was pointing in her face, screaming at the top of his lungs, and moved his face so close to hers that his spit and saliva was landing on her face.

51. A fellow lieutenant, who was in charge of the male firefighter, walked up close to the two of them. Lt. Franchina, in a frightened panic, asked him to get his subordinate under control. He replied by saying "I'm not your fucking babysitter" and walked away.

52. The male continued to yell and scream in her face, making threats and insults towards her.

53. Lt. Franchina reported the incident to the department and the union immediately and contacted both on multiple occasions over the next two days. Neither replied.

54. She went to the State Police and a temporary restraining order was issued two days later on December 11, 2009.

55. Lt. Franchina requested Union representation at the hearing regarding the restraining order violation. She was informed that the Union could not be present. She was informed that she was not entitled to a paid attorney from the Union.

56. A hearing was held in the Superior Court on January 5, 2010. The male firefighter was represented by counsel provided through the Union. Lt. Franchina represented herself pro-se. A lifetime Restraining Order was granted. Franchina and her coworker could be near each other when responding to emergencies only.

57. That day, the Chiefs issued an Order by email informing the department that "Lt Franchina was successful in her bid to obtain a restraining order…" against the male firefighter. The Order instructed the chiefs, captains, and supervisors to ensure that Franchina and her attacker were never scheduled together and that they should ensure he would not be scheduled in her station or any station with a Rescue.

**Restraining Order Violation**

58. On October 28, 2010 she was not scheduled to work but notified the on-duty Captain that she was coming in to drop-off and pick-up paperwork. When she arrived at the station she discovered that the FF who assaulted her was scheduled in her station when she saw him from behind while he was speaking with other firefighters on duty. She heard him state "Who the fuck does she think she is getting a plan like that? Captain, can you help me?" The captain replied by stating "Hey, I hear ya." The firefighter then said, "All I have to say is fuck her, she doesn't belong here with us. I can't stand that fucking bitch."

59. She loudly cleared her throat to attract their attention and stated to the Captain, in a calm and professional: "Captain, do you have something to discuss with me?" He stated: "no." Her attacker simply chuckled and stared at her in a threatening manner.

60. Upon information and belief, the firefighter who attacked her has never been disciplined for the first attack or violating the Order that he not be present in her station.

### Injured on Duty Status

61. Lt. Franchina was diagnosed with and treated for PTSD and anxiety after the Job Street Incident. She was taken off duty again after the FF Hall incident. Her doctor opined that the event was sufficiently traumatic to trigger a recurrence of the worst symptoms of PTSD including but not limited to panic attacks, depression, anxiety, constant fear, lack of sleep, and others.

62. After a period of time in which she complied with all treatment she was once again declared fit for duty and returned to the job. She continued to comply with her medications and therapy requirements while on duty.

63. The symptoms of PTSD continued to interrupt her daily life despite her compliance with treatment. She often had nightmares of the Job Street and FF Hall incidents. She underwent repeated HIV tests to ensure that she was not infected after the blood and fluids were snapped into her face. She feared that her fellow firefighters would not support her on an emergency call, and worse, that no one would intervene if another male took it upon himself to attack her. She feared that the next attack could be far more violent.

64. She filed her first application for Injured on Duty status on or about October 28, 2010. She complied with all the requirements by providing a medical opinion, corroborating medical documentation, and corroborating statements from her partner.

65. The CBA requires that IOD status be temporarily granted when a proper application is filed. The department may then require an independent medical examination. The entire process is supposed to be completed in approximately thirty to forty-five minutes.

66. The application was ignored. When she made follow-up inquiries, she was referred to the insurance company, who would then refer her back to the department. Lt. Franchina, through counsel, made written requests to the department to review her application and provided medical narrative reports, medical documentation, incident reports, and other corroborating information four times in December, 2010 January, 2011, February, 2011, and March, 2011. No response was ever received.

67. Lt. Franchina, through counsel, made written requests to the Union to file a grievance on her behalf and enforce the CBA provisions regarding IOD status. She provided them with her application and provided medical narrative reports, medical documentation, incident reports, and other corroborating information four times in December, 2010 January, 2011, February, 2011, and March, 2011. No response was ever received.

68. During the interim time, Ms. Franchina was forced use sick time and vacation time because the department refused to provide her with compensation based on work-related injuries, as required under the collective bargaining agreement. Upon information and belief, other firefighters who were not disabled, female, or lesbian were not required to use their sick or vacation time for compensation under similar circumstances.

69. Finally, after more than six months and only after the intervention of the newly elected Commissioner of Safety she was evaluated by a doctor.  The doctor found that she suffered from PTSD and had possible other emotional disorders exacerbated by the harassment she endured from the fire department.

## CLAIMS

### Count I

### Harassment Based on Gender In Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")

70. The plaintiff restates paragraphs 1-69 as if stated fully herein.

71. This case is a claim brought by the plaintiff against City of Providence, Fire Department.

72. The facts as described herein establish that the plaintiff was denied the privileges, benefits, and entitlements of her employment based on her gender and/or that she was treated more harshly, or disparately, and/or in a manner less favorable than her male counterparts.

73. The egregious, wanton, and intentional conduct of her co-workers and managers constitutes a knowing violation of her protected federal rights.

74. As a result, the plaintiff has suffered and continues to suffer damages.

### Count II

### Harassment Based on Sexual Orientation In Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")

75. The plaintiff restates paragraphs 1-74 as if stated fully herein.

76. This case is a claim brought by the plaintiff against City of Providence, Fire Department.

77. The facts as described herein establish that the plaintiff was denied the privileges, benefits, and entitlements of her employment based on her sexual orientation and/or that

she was treated more harshly, or disparately, and/or in a manner less favorable than her

heterosexual counterparts, and/or subjected her to an environment that was hostile.

78. The egregious, wanton, and intentional conduct of her co-workers and managers

constitutes a knowing violation of her protected federal rights.

79. As a result, the plaintiff has suffered and continues to suffer damages.

## Count III

### Harassment Based on Disability In Violation of 42 USCS prec § 12111, The Americans With Disabilities Act of 1990, as amended ("ADAA")

80. The plaintiff restates paragraphs 1-79 as if stated fully herein.

81. This case is a claim brought by the plaintiff against City of Providence, Fire Department.

82. The plaintiff is now, and was at times relevant to this Complaint, a qualified disabled

individual as contemplated by the statute.  She was capable of doing the essential

functions of the job with or without reasonable accommodation and suffered from a

permanent, qualifying disability.

83. The facts as described herein establish that the plaintiff was denied the privileges,

benefits, and entitlements of her employment based on her disability and/or that she was

treated more harshly, or disparately, and/or in a manner less favorable than her non-

disabled counterparts.

84. The egregious, wanton, and intentional conduct of her co-workers and managers

constitutes a knowing violation of her protected federal rights.

85. As a result, the plaintiff has suffered and continues to suffer damages.

## Count IV

### Retaliation Based on Title VII VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")

86. The plaintiff restates paragraphs 1-85 as if stated fully herein.

87. This case is a claim brought by the plaintiff against City of Providence, Fire Department.

88. Title VII makes it unlawful for any employer to retaliate against an employee who as engaged in a protected activity under the statute.

89. The plaintiff engaged in a protected activity when she made complaints to superiors her union representative(s), concerning her belief that she was being discriminated against.

90. The defendants, by way of example but not limitation, did retaliate against the plaintiff by subjecting her to material and adverse conditions of employment and a hostile environment.

91. As a result, the plaintiff suffered and continues to suffer damages.

## Count V

**Harassment Based on Gender In Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")**

92. The plaintiff restates paragraphs 1-91 as if stated fully herein.

93. This case is a claim brought by the plaintiff against Providence Firefighters IAFF Local 799.

94. The facts as described herein establish that the plaintiff was denied the privileges, benefits, and entitlements of her union membership based on her gender and/or that she was treated more harshly, or disparately, and/or in a manner less favorable than her male counterparts.

95. The egregious, wanton, and intentional conduct of her co-workers and managers constitutes a knowing violation of her protected federal rights.

96. As a result, the plaintiff has suffered and continues to suffer damages.

## Count VI

**Harassment Based on Gender In Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")**

97. The plaintiff restates paragraphs 1-96 as if stated fully herein.

98. This case is a claim brought by the plaintiff against Providence Firefighters IAFF Local 799.

99. The facts as described herein establish that the plaintiff was denied the privileges, benefits, and entitlements of her employment based on her sexual orientation and/or that she was treated more harshly, or disparately, and/or in a manner less favorable than her heterosexual counterparts, and/or subjected her to an environment that was hostile.

100.    The egregious, wanton, and intentional conduct of her co-workers and managers constitutes a knowing violation of her protected federal rights.

101.    As a result, the plaintiff has suffered and continues to suffer damages.

## Count VII

**Harassment Based on Disability In Violation of 42 USCS prec § 12111, The Americans With Disabilities Act of 1990, as amended ("ADAA")**

102.    The plaintiff restates paragraphs 1-102 as if stated fully herein.

103.    This case is a claim brought by the plaintiff against Providence Firefighters IAFF Local 799.

104.    The plaintiff is now, and was at times relevant to this Complaint, a qualified disabled individual as contemplated by the statute.  She was capable of doing the essential functions of the job with or without reasonable accommodation and suffered from a permanent, qualifying disability.

105.     The facts as described herein establish that the plaintiff was denied the privileges, benefits, and entitlements of her union membership based on her disability and/or that she was treated more harshly, or disparately, and/or in a manner less favorable than her non-disabled counterparts.

106.     The egregious, wanton, and intentional conduct of her co-workers and managers constitutes a knowing violation of her protected federal rights.

107.     As a result, the plaintiff has suffered and continues to suffer damages.

## Count VIII

### Retaliation Based on Title VII VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")

108.     The plaintiff restates paragraphs 1-107 as if stated fully herein.

109.     This case is a claim brought by the plaintiff against Providence Firefighters IAFF Local 799.

110.     Title VII makes it unlawful for any employer to retaliate against any union member who has engaged in a protected activity under the statute.

111.     The plaintiff engaged in a protected activity when she made complaints to superiors, and the Equal Employment Opportunity officer, concerning her belief that she was being discriminated against.

112.     The defendants, by way of example but not limitation, did retaliate against the plaintiff by subjecting her to material and adverse conditions of employment and a hostile environment.

### Prayer for Relief

113.     The plaintiff requests that this honorable Court:

a.  Enter judgment in her favor against all defendants on all claims;

b. Order that the defendant cease all discriminatory practices and undergo appropriate training in order to ensure the eradication of all unlawful discriminatory conduct;

c. Award the plaintiff back pay, front pay, costs, attorneys fees, and interest;

d. Award the plaintiff liquidated damages, punitive damages, damages for emotional distress, compensation for past and future medical expenses, and any other award or equitable relief that this Court deems to be just and proper.

**_Plaintiff demands a trial by jury on all issues so triable_.**

Respectfully submitted by counsel,

**/s/ Kevin P. Braga**
*Law Office of Kevin P. Braga*
10 Elmgrove Avenue
Providence, RI 02906
Tel. 401.861.4444
Kevin@kpbragalaw.com
Local counsel

**/s/ John T. Martin**
Mann & Martin LLP
1071 Worcester Road, Suite 42
Framingham, MA 01701
508-270-0500
BBO# 676344
*pending admission pro hac vice*